# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:15-CV-00037-RLV-DCK

| | |
|---|---|
| **TIMOTHY SHELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | <u>**ORDER**</u> |
| ) | |
| **TYSON FOODS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

      **THIS MATTER IS BEFORE THE COURT** on Defendant Tyson Foods, Inc.'s Motion for Summary Judgment (the "Motion"). [Doc. No. 16]. Plaintiff Timothy Shell has opposed the Motion. *See* [Doc. Nos. 18 & 19]. This matter is now ripe for review and decision. Having carefully studied and considered the parties' briefs, the record as a whole, and relevant governing precedents, the Court hereby **GRANTS** the Defendant's Motion.

## I.     BACKGROUND

      Plaintiff Timothy Shell (hereinafter, "Plaintiff" or "Shell") began working for Defendant Tyson Foods, Inc. (hereinafter, "Defendant" or "Tyson") in its Virginia facility in 1995. [Doc. No. 17-1] at p. 3. Afterward, Shell began working as a production supervisor in Tyson's Wilkesboro, North Carolina facility in the late-90s. *Id.* at p. 4. In March 2011, Shell was promoted to the position of shift production manager – a position he held until his employment with Tyson terminated on June 5, 2013. *See id.* at pp. 7-8. In his managerial role, Shell was responsible for supervising several subordinate employees. *See* [Doc. No. 19-21] at p. 4. At all times relevant hereto, Shell was an at-will employee of Tyson. *See* [Doc. No. 17-1] at p. 3.

While employed by Tyson, Shell was subject to various employment and managerial policies. *See*, *e.g.*, [Doc. No. 17-4] at pp. 22-24. For instance, Shell was subject to Tyson's Management Standards of Behavior Policy, which provides that "Team Members in management have the responsibility to represent the Company in a positive manner at all times" and that "[a]ll management Team Members are expected to follow all Company policies and procedures to include, but not limited to, Ethics, Code of Conduct, Harassment/Discrimination, and all other HR and Company Policies and Procedures." *See* [Doc. No. 17-4] at p. 23. Shell agreed to be bound by these policies as a term and condition of his satisfactory employment with Tyson.

Though Shell received two undated and predominantly positive "TEAMS" competency reviews from Tyson manager Andrew Boyles in 2011 and 2012[1] (*see* [Doc. No. 19-3]; [Doc. No. 19-4]), as a supervisor and manager, Shell developed a record of allegedly violating Tyson's employment and managerial standards. These alleged violations are documented and included in the evidence before the Court. For example, in June 2010, Shell was disciplined for allegedly assigning, improperly, supervisory responsibilities to a subordinate employee, and for intimidating the employee in violation of company policy.[2] *See* [Doc. No. 17-1] at pp. 33-36, 94; [Doc. No. 19-1]. As part of this disciplinary action, Tyson issued Plaintiff a written warning and advised him that future violations could result in more serious personnel actions, such as termination. *See id.* In June 2011, Shell was again disciplined following Tyson's investigation into allegations that he

---

[1]  In his brief, Plaintiff claims that he received "only positive performance reviews throughout his tenure" with Tyson. *See* [Doc. No. 19] at p. 5. However, in support of this assertion, Plaintiff points only to the two undated performance reviews cited above. *Id.* Contrary to Plaintiff's apparent argument, the cited evidence demonstrates only that Shell received two positive performance reviews during his tenure with Tyson – not that he represented the model employee. Evidence of two undated, but positive, performance reviews does not establish, as an undisputed fact, that Plaintiff received "only positive" assessments from Tyson. Indeed, the record is chock full of uncontroverted evidence that Tyson had to reprimand Plaintiff on several occasions for alleged deficiencies in his performance.
[2]  In his deposition, Shell testified that he disagrees with Tyson's contention that he was in violation with company policy during the June 2010 encounter; however, he admits, and it is undisputed, that he was disciplined by Tyson for this alleged conduct.

had openly harassed a fellow employee while at work. *See* [Doc. No. 19-2]. At the investigation's conclusion, Tyson determined that Shell's conduct was in violation of its employment and management policies. *See id.* Tyson again admonished Shell and warned him that future misconduct could result in his termination. *See id.* In November 2012, Shell was again disciplined for allegedly threatening to terminate subordinate employees for their use of overtime – an act that Tyson also believed violated its employment and managerial policies. *See* [Doc. No. 17-1] at pp. 41-48.

In January 2013, Michael Cox became plant manager of the Wilkesboro, North Carolina facility and Shell reported directly to him in that capacity. *See* [Doc. No. 19-22] at pp. 3-4. Shortly after Cox was hired, he met with Shell and, at some point during their conversation, Cox commented about how Tyson needs to "get[] the old folks out . . . and get[] the young bucks in." *See* [Doc. No. 17-1] at pp. 48-49. Other Tyson employees heard Cox make similar statements. *See* [Doc. No. 19-5] at p. 2 (Gary Messer Affidavit) (testifying nonspecifically that, "on numerous occasions," he "heard Mr. Cox say 'this is a young man's game now' and 'it's time for the old to go and the new to come in'"). As plant manager, however, Cox was without singular authority to hire, discipline, or terminate any employee. *See* [Doc. No. 19-22] at p. 3; [Doc. No. 17-5] at p. 4; [Doc. No. 20-3] at pp. 3-4. Rather, all such employment actions were carried out by Tyson's Human Resources Department. *See* [Doc. No. 17-5] at pp. 4-5; [Doc. No. 20-3] at pp. 3-4, 5-6. Specifically, once an allegation of misconduct is made against a managerial employee, the appropriate Human Resources Manager will institute an investigation and, at its conclusion, submit any findings to the corporate Director of Human Resources for decision and appropriate action. *See*, *e.g.*, [Doc. No. 17-2] at p. 10. In Tyson's corporate structure, plant managers (such as Cox)

are not in the "chain of command" over human resources officers, and can exercise no supervisory authority over them. *See* [Doc. No. 20-4] at p. 3.

In April 2013, Tyson was notified through confidential channels that Shell was "bull[ying], harass[ing] and intimidat[ing] employees." *See*, *e.g.*, [Doc. No. 17-4] at p. 2. In May 2013, Tyson became aware of additional allegations that Shell had shouted inappropriately toward another employee.[3] *See id.* Those complaints led to Shell being temporarily suspended from his position and caused Tyson to conduct an internal investigation into his conduct. *See* [Doc. No. 17-4] at p. 2; [Doc. No. 17-2] at pp. 4, 7-8. The investigation was headed by the Human Resources Manager of the Wilkesboro facility, Brent West. *See* [Doc. No. 20-4] at p. 2. As part of his investigation, West interviewed several Tyson employees about Shell and his professional conduct. *See* [Doc. No. 17-4] at pp. 2-6; [Doc. No. 20-4] at p. 3. Through these interviews, West learned that Shell had, in other instances, conducted himself in an unprofessional manner toward his colleagues and subordinate employees. To be a bit more precise, West was told that Shell bullied, intimidated and demeaned others; repeatedly cursed in the workplace; undermined the authority of a fellow supervisor by admonishing him in front of his employees; acted in a condescending and belittling manner towards others; and abused the authority Tyson had granted to him. *See*, *e.g.*, [Doc. No. 17-4] at pp. 2-6; [Doc. No. 20-4] at p. 3; *see also* [Doc. No. 17-6] at pp. 2-3; [Doc. No. 17-7] at pp. 2-3. West also learned that Shell had publicly made nationality-based comments while on the job. *See* [Doc. No. 17-4] at p. 5; *see also* [Doc. No. 17-1] at p. 90 (Shell Deposition) (admitting to have made the following comment over Tyson's radio system: "Guys, you know, it's not a Spanish

---

[3]     Importantly, the Court notes that Shell disputes whether either of these alleged improper activities *actually* occurred. However, Shell does *not* dispute whether the complaints and allegations *themselves* existed-in-fact. For purposes of this motion, the Court concerns itself with complaints and allegations of which Tyson was aware and had reason to believe had occurred when disciplining Shell – not whether Shell *actually* acted inappropriately. *See*, *e.g.*, *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) ("[I]t is the perception of the decision maker that is relevant . . . not the opinions of [a plaintiff's] co-workers or other third parties."); *Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 534 (W.D.N.C. 2015); *see also Ben-Levy v. Bloomberg*, 518 Fed. App'x 17, at *19 (2d Cir. 2013).

channel. Let's speak in English so we can all understand it."). West also came to believe that Shell had knowingly violated Tyson's Human Resources policies by issuing disciplinary papers outside of ordinary protocol in order to leverage control over another employee. *See* [Doc. No. 17-4] at pp. 5-6; *see also* [Doc. No. 17-1] at pp. 64-76. In his deposition, Shell admits that the disciplinary papers he drew up against Ernie Holloway, a colleague, violated Tyson's HR policies. *See* [Doc. No. 17-1] at p. 76. In fact, Shell has admitted that several instances of his alleged misconduct, if true, would violate company policies and procedures. *See*, *e.g.*, [Doc. No. 17-1] at pp. 16-17, 22, 34, 35-37, 45-47, 54.

Once West completed his investigation, his findings were forwarded to Director of Corporate Human Resources Kurt Schrock, a corporate HR employee based in Tyson's Springdale, Arkansas office. [Doc. No. 17-2] at p. 9. Schrock was not involved in the investigation of Shell's alleged misconduct; instead, he became involved only once the investigation was completed and the facts were gathered for his review and judgment. *See* [Doc. No. 17-3] at pp. 5-6, 8-9; [Doc. No. 17-2] at p. 9. Schrock decided that, based upon the evidence gathered during West's investigation, Shell should and would be terminated from Tyson employment. *See* [Doc. No. 17-3] at pp. 5-6, 8-9; [Doc. No. 17-4] at pp. 6-7. Schrock prepared a termination letter to be delivered to Shell, which stated the basis for his decision. *See* [Doc. No. 17-3] at pp. 5-6, 8-9; [Doc. No. 17-4] at pp. 6-7. Specifically, the letter admonished Shell for the inappropriate behavior uncovered during West's investigation, reminded Shell that he was notified on multiple occasions that his behavior would have to change in order to remain a Tyson employee, and informed Shell that his employment was being terminated immediately. [Doc. No. 17-4] at pp. 6-7, 30-31. Mr. Cox was not involved with West's investigation of Shell, and did not counsel Schrock's decision to terminate him. *See* [Doc. No. 17-4] at pp. 6-7; [Doc. No. 20-2] at p. 2; [Doc. No. 20-5] at pp. 4-

5; *accord* [Doc. No. 17-3] at pp. 5-6, 8-9; [Doc. No. 17-4] at pp. 6-7. At the time of his termination, Shell was approximately 49 years old. *See* [Doc. No. 17-1] at pp. 3, 8, 89. Moreover, Shell had returned from an approved leave under the federal Family and Medical Leave Act (the "FMLA"), approximately one month before his termination. *See id.* at pp. 29-33.

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *accord Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same).

It is well-established that the mere existence of "some" factual disputes will not defeat summary judgment; rather, the dispute presented must be "genuine" and concern "material" facts. *Anderson*, 477 U.S. at 247-248 (emphasis in original); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Only disputes over facts that might affect the outcome of the suit under relevant governing law fall within the relevant category. *See Fields v. Verizon Servs. Corp.*, 493 Fed. App'x 371, 374 (4th Cir. 2012). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir.

2012). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Abstract or conjectural doubts, minor discrepancies, and points irrelevant to the "material" facts are not genuine or material, and such do not cast sufficient doubt on the validity of testimony to preclude the entry of summary judgment. *Emmett*, 532 F.3d at 297; *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). The non-movant cannot demonstrate a triable issue of disputed fact by building one inference upon another. *Emmett*, 532 F.3d at 297 (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Although it is certainly true that "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party," *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc), it is equally true that a court is "well within its discretion in refusing to ferret out the facts that counsel has not bothered to excavate." *Cray Commc'ns. Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994). Mere conjecture and speculation, however, are insufficient to overcome a summary judgment motion. *See Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1386 (4th Cir. 1987); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241-46 (4th Cir. 1982); *accord Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Because a federally protected right to "just cause" protection does not exist with regard to private sector employment, a plaintiff is not entitled to relief simply because he disagrees with his employer's employment decisions, or because he contends that a particular decision was arbitrary or baseless. *See Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 523 (W.D.N.C. 2015) (Voorhees, J.). Instead, to prevail, a plaintiff must generally demonstrate that his private employer's adverse decision resulted from "some sort of . . . prohibited discriminatory animus," violated some federal statutory right, or violated a similar (or broader) state law right. *See id.* In North Carolina, "absent

-7-

an employment contract for a definite period of time, both employer and employee are generally free to terminate their association at any time and without reason." *Head v. Adams Farm Living, Inc.*, 775 S.E.2d 904, 909, 2015 N.C. App. LEXIS 705 (N.C. Ct. App. 2015). The Court's review of this matter must be guided by these principles.

> B.    Shell has Failed to Demonstrate a Genuine Issue of Material Fact Concerning Whether Tyson Terminated his Employment Based on Unlawful Age Discrimination.

Tyson has presented the Court with two arguments against Shell's age discrimination claim: first, that Shell has failed to establish a prima facie case, namely because he has no direct evidence of age discrimination, and because he has failed to establish an indirect inference of discrimination, utilizing the adapted *McDonnell Douglas* proof scheme, in that Shell was not performing his duties in accordance with Tyson's legitimate expectations at the time of his termination; and second, even if Shell has established a prima facie case under *McDonnell Douglas*, Tyson has satisfied its burden to produce a legitimate and nondiscriminatory reason for Shell's termination, and Shell has failed to produce evidence sufficient to create a jury issue on pretext. Because the Court agrees that Shell has not produced direct evidence of age discrimination and has failed to demonstrate pretext, Tyson will be granted summary judgment on Shell's age discrimination claim.

Under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.*, an employer is prohibited from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to be a member of the class protected by the ADEA, an individual must be at least 40 years old at the time the alleged discriminatory act occurs. *See* 29 U.S.C. § 631(a). To establish a claim under the ADEA, a plaintiff

may rely on either direct evidence of discriminatory intent or indirect evidence established through the adapted inferential proof scheme announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (applying *McDonnell Douglas* to ADEA claims); *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (recognizing that discriminatory intent based on age can be demonstrated by direct evidence). In either case, however, the plaintiff carries the ultimate burden of establishing that unlawful discrimination was the "but for" cause of his injury and that "age was the 'reason' that the employer decided to act." *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 234 (4th Cir. 2016) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)).

### 1. *Direct Evidence*

In opposition to Tyson's request for summary judgment, Shell contends that he has direct evidence that his age was the "but for" cause of his termination. For support, Shell points to comments by plant manager Michael Cox and his repeated suggestions that Tyson should replace the "old folks" in its workforce with some "young bucks." *See* [Doc. No. 19] at pp. 2, 6, 14; *accord* [Doc. No. 17-1] at pp. 14, 49-50. Cox allegedly made these age-biased comments "regularly." *See* [Doc. No. 19] at pp. 13-14. Despite this evidence, however, the Court is not persuaded that Shell has produced "direct evidence" that his age was the "but for" cause of his termination.

Direct evidence is evidence that, if deemed persuasive by the trier of fact, "would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)), *rev'd on other grounds by* 517 U.S. 308 (1996). To withstand challenge, "[t]he evidence must 'clearly indicate a discriminatory attitude at the workplace and must illustrate a nexus between the negative attitude and the employment action.'" *Pilger v. D.M.*

*Bowman, Inc.*, 833 F. Supp. 2d 489, 494 (D. Md. 2011) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 314 F.3d 657, 665 (4th Cir. 2003)), *aff'd by* 521 Fed. App'x 307 (4th Cir. 2013). The "nexus" necessary to sustain a plaintiff's reliance on direct evidence requires proof of discriminatory intent that "bear[s] directly on the contested employment decision." *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). "Direct evidence may include . . . statements by an employee's supervisors that are generally discriminatory" or statements by such supervisors that indicate their actions were driven predominately by the employee's protected status. *See Hinton v. Virginia Union Univ.*, ___ F. Supp. 3d ___, 2016 WL 2621967, at *5 (E.D. Va. May 5, 2016). However, when reviewing a plaintiff's evidentiary proffer, it is imperative that the court also consider whether the ill-motivated supervisor was, in reality, the ultimate decision-maker concerning the adverse employment action under review. *Accord Reid v. Dalco Nonwovens, LLC*, 154 F. Supp. 3d 273, 2016 WL 51271, at *8 (W.D.N.C. 2016) (Voorhees, J.); *see also Williams v. PPG Indus., Inc.*, 2002 WL 32667169, at *4 (M.D.N.C. July 16, 2002) (quoting *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998)), *aff'd*, 50 Fed. App'x 118 (4th Cir. 2002).

Here, Shell has not shown that his termination resulted from age-bias "without any inference or presumption." *See O'Connor*, 56 F.3d at 548. Taking the facts in the light most favorable to Shell, the evidence shows that Cox held at least some discriminatory animus toward Tyson employees based upon their age. Cox made comments indicating that he would prefer that Tyson replace older employees with younger ones. However, nowhere in his brief has Shell pointed to direct evidence that Cox intended to replace him specifically with a "young buck," or believed that Shell was an "old folk" that should be replaced. Rather, all of Shell's record citations point only to circumstances where Cox referred generally to "older folks" and "young bucks;"

-10-

none of which Shell believed were referencing him directly. *See*, *e.g.*, [Doc. No. 17-1] at p. 49; *compare Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203 (11th Cir. 2010) (finding direct evidence of age discrimination sufficient to surpass summary judgment where employer "called [Plaintiff] into his office at the end of the month and fired her, explaining that 'I need someone younger I can pay less . . . I need [a 25 year old employee]. . . .'") *with Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (finding no direct evidence of age discrimination where an employer allegedly said job candidates like plaintiff "would have a hard time getting a job because 'hiring people at that age, they didn't get the work out of them that they did younger people,'" because plaintiff presented no evidence that the comment had any nexus with the decision to terminate him) *and Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (employer's comment that "there comes a time when we have to make way for younger people" was not direct evidence of age discrimination because the comment lacked sufficient nexus to termination of the plaintiff employee). A jury would have to accept one inference and presumption after another before concluding that Cox's generalized statements indicated an age-bias against Shell, especially when no other record evidence connects Cox's comments to Shell's employment status. *Cf. Emmett*, 532 F.3d at 297. Such evidence is not properly cast as "direct evidence" for purposes of summary judgment in an employment discrimination case, and must therefore be rejected as to that theory. *Accord O'Connor*, 56 F.3d at 548.

In any event, Shell has failed to create a genuine dispute of material fact regarding whether Cox played a decisive role in his termination. To withstand summary judgment on his direct evidence argument, Shell must demonstrate that Cox's age-based comments bore a sufficient "nexus" with his termination such that Cox's discriminatory intentions could be found by a reasonable jury to have been the driving force, or the "but for" cause, behind Tyson's adverse

employment action. *See*, *e.g.*, *Pilger*, 833 F. Supp. 2d at 494. Shell has not carried his burden on this issue because the record demonstrates that Cox played virtually no role in his termination.

For example, the complaints against Shell that led to Tyson's investigation did not originate from Cox. Instead, each complaint was made by fellow employees who were disturbed by Shell's conduct. To be sure, some complaints even predated Cox. Moreover, Cox did not conduct Tyson's investigation, nor did he participate in it. Shell attempts to create a dispute of fact on this issue by arguing that Cox *did* play a role in the investigation, citing a single notation in West's investigation notes wherein reference is made to a "Michael." *See* [Doc. No. 19-17] at p. 4. Shell argues this note indicates that Michael Cox was present during West's interview of Tyson employee Tim Little and, therefore, played a role in West's investigation. *See id.* The Court, however, does not read West's note as broadly as Shell. Tyson has supplied the Court with affidavit testimony to elaborate on this note and its purpose. Tyson's witnesses testify that Cox was not present at this interview, and that reference to "Michael" is made in West's note only "in relation to Little contrasting the positive management style of Plant Manager Cox with the negative management conduct of Shell." [Doc. No. 20-4] at p. 2. A fair reading of West's entire note does not reasonably lead one to conclude that Cox was present at this interview. Shell has not proffered evidence that contradicts or raises doubt as to Tyson's version of the facts on this issue. Shell offers no testimony from Tim Little or any other person showing that Cox was indeed present during West's interviews. Instead, Shell's opposition relies on nothing more than idle speculation and insubstantial evidence that Cox played any role in the investigation. *See Autry*, 820 F.2d at 1386; *Lovelace*, 681 F.2d at 241-46 (4th Cir. 1982); *see also Cray Commc'ns. Inc.*, 33 F.3d at 396. Regardless, as will be discussed below, simply demonstrating that Cox was *included in* the investigation does not establish that Shell was terminated *because of* his age.

-12-

The record also decidedly shows that Cox was not responsible for making the final decision to terminate Shell, nor did he have a determinative role in the process leading up to the decision. "Remarks by non-decision makers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Williams*, 2002 WL 32667169, at *4; *see also Adams v. Univ. of North Carolina–Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *Collin v. Rectors & Visitors of Univ. of Virginia*, 163 F.3d 598, 1998 WL 637420, *3 (4th Cir. 1998); *U.S. ex rel. Cooper v. Auto Fare, Inc.*, 2014 WL 2889945, at *4 (W.D.N.C. Apr. 16, 2014), *adopted by*, 2014 WL 2889993 (W.D.N.C. June 25, 2014); *Tamar v. GEICO Cas. Co.*, 2011 WL 4961961, at *3 (E.D. Va. Oct. 18, 2011), *aff'd*, 471 Fed. App'x 189 (4th Cir. 2012); *Faulkner v. Glickman*, 172 F. Supp. 2d 732, 737–739 (D.Md. 2001). Defendant shows that Schrock, Tyson's corporate human resources representative, decided to fire Shell after reviewing and considering the evidence gathered during West's investigation. *See* [Doc. No. 20-5] at p. 6; [Doc. No. 17-3] at pp. 6, 8-9. According to Schrock, Tyson fired Shell because he repeatedly violated corporate policies and procedures, as evidenced by West's investigation. *See* [Doc. No. 20-5] at p. 6; [Doc. No. 17-3] at pp. 6, 8-9. Shell has not established that either West, Schrock, or any other Tyson employee (other than Cox) held an age-based discriminatory bias against Tyson employees. *See*, *e.g.*, [Doc. No. 17-1] at p. 61. Because Schrock, not Cox, was the final decision-maker in this circumstance, evidence showing that Cox had made generalized discriminatory remarks is not "direct evidence" that Shell's termination resulted from an age-based bias. Accordingly, Shell's direct evidence theory of the case must fail unless he produces some other evidence to indicate that Schrock's involvement was a mere "curtain," which obscured Cox's critical and determinative role in his termination.

-13-

Shell attempts to sidestep Schrock's involvement by arguing that Tyson's corporate human resources department was merely a "cat's paw," or unwitting accomplice, in the decision-making process, shielding the company from liability while giving force and effect to Cox's discriminatory spite.[4] *See* [Doc. No. 19] at pp. 15-16. To that end, Shell argues that Schrock perfunctorily reviewed West's investigation and unknowingly "rubber stamped" Cox's ageist intent by issuing Shell's termination order. *See id.* "The 'cat's paw' . . . theory imposes liability on an employer for the discriminatory motivations of a supervisor who was 'principally responsible' for an adverse employment decision, even if that supervisor was not the formal decisionmaker." *See Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 443 (D. Md. 2015). In other words, a formal decision-maker "acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate" employee who has a discriminatory motivation. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290 (4th Cir. 2004). To prevail on this theory, a plaintiff "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or [as] the actual decisionmaker for the employer." *See Hill*, 354 F.3d at 291.

Here, as is partially discussed above, Shell's argument on this point suffers from a critical flaw – he has failed to produce any evidence indicating that Cox was, in reality, principally responsible for Tyson's decision to terminate him. Cox was neither involved in West's investigation nor was he involved in Schrock's review of that investigation. West testified that Cox was not involved in the investigation, as did Cox. *See* [Doc. No. 17-4] at p. 6; [Doc. No. 20-2] at p. 2; *accord* [Doc. No. 17-3] at p. 5. Likewise, Schrock testified that he reached the decision

---

4    "The 'cat's paw' theory is attributed to a fable, 'The Monkey and the Cat,' and refers to one person being used unwittingly by another to accomplish his purposes." *Hoskins v. Napolitano*, 2012 WL 5921041, at *1 (D. Md. Nov. 26, 2012).

-14-

to terminate Shell on his own. *See* [Doc. No. 20-5] at p. 6; [Doc. No. 17-3] at pp. 6, 8-9. Indeed, the evidence shows that Cox was only brought into the loop *after* the decision had been made and the termination letter was circulated to him through email. *See* [Doc. No. 19] at pp. 14-15 (citing an email from Schrock to Cox, West, and Complex Manager Raymond Johnson, sent the night before Shell's termination, which forwarded to them a copy of the termination notice ultimately issued to Shell and requested that they call him after "digest[ing]" the letter to discuss).[5] Though Shell contends that Cox played *some* role in his termination, as indicated by the circulated email and Cox's testimony that he, along with West, delivered the separation notice to Shell, this evidence is simply not enough to establish that Cox was the *true* decision-maker and that Schrock was merely his "cat's paw." *See Hill*, 354 F.3d at 291 (holding that, for the "cat's paw" theory to prevail, the individual harboring unlawful motives must, in effect, be "the one principally responsible for the decision or the actual decisionmaker for the employer"). Nor has Shell produced any evidence showing that West's investigation was, in actuality, controlled by Cox, or that West or Schrock themselves held a discriminatory bias against Shell. *See*, *e.g.*, *Noel v. United Parcel Serv., Inc.*, 2014 WL 4452667, at *7 n.6 (D. Md. Sept. 9, 2014). Moreover, the record clearly demonstrates that Cox, as a plant manager, had no authority to demand that West or

---

[5]    Shell surmises that this email demonstrates Schrock consulted with Cox prior to issuing the termination notice, and that Cox lied during his deposition when he testified that he had "zero involvement" in West's investigation. *See* [Doc. No. 19] at pp. 14-15. The Court is not persuaded. The email shows only that Cox was provided a copy of Schrock's decision only *after* it was made, though a day before Shell was informed. Because the email only evidences that Cox received the termination letter after Schrock made his decision, it cannot be evidence that Cox was involved in that decision. Further, Cox was provided the letter *after* West's investigation concluded – thus, the email cannot demonstrate that he played a role in such investigation. Shell's contention that the email demonstrates that a sort of "caucus" occurred between Cox and Schrock prior to his firing is nothing more than speculation. Though the email requests that the recipients contact Schrock after "digest[ing]" its contents, there is no evidence that any sort of contact actually occurred. Tyson denies that Cox and Schrock spoke about the termination letter prior to Shell's separation. *See* [Doc. No. 20] at p. 6. Even so, because the decision to terminate had already been made at that point, the Court is not aware of any significance that an after-the-fact conference call or meeting would have on the matter.

Schrock, who are HR officers and outside Cox's "chain of command," take any action whatsoever. *See* [Doc. No. 20-4] at p. 3.

Even if Cox did play a role in Shell's termination, even a *substantial* role, such involvement would not establish liability under Shell's "cat's paw" theory. *See Hill*, 354 F.3d at 291 (stating it is insufficient to prevail at summary judgment for the plaintiff merely to show that the improperly motivated person exerted "influence or even substantial influence in effecting a challenged decision"). Rather, the case law is clear that, to prevail on such argument, the record must allow for a reasonable jury to conclude that Cox was, in fact, the actual decision-maker for Tyson. *See id.* ("[A]n employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision."). The record in this case does not allow for that conclusion. Accordingly, Shell's direct evidence theory of unlawful age discrimination fails.

### 2.    *McDonnell Douglas Framework*

#### i.    PRIMA FACIE CASE

Because Shell has brought forth no direct evidence showing that he was terminated as a result of discriminatory animus, he "must establish a circumstantial case under the burden shifting framework set forth in *McDonnell Douglas*."[6] *Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 524 (W.D.N.C. 2015) (Voorhees, J.) (citing *Fields v. Verizon Servs. Corp.*, 493 Fed. App'x 371, 375 (4th Cir. 2012)); *accord Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238-41 (4th Cir. 1982) (adapting the framework used in Title VII cases to ADEA cases). In the ADEA context, a plaintiff

---

[6] The *McDonnell Douglas* proof scheme is appropriate when the parties dispute the fundamental reasoning underlying the plaintiff's discharge. Though it is helpful to the Court and the parties, the *McDonnell Douglas* proof scheme should not be applied in a "rigid, mechanized, or ritualistic" manner. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, (1978); *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 196 n.6 (4th Cir. 1997). Instead, it should be utilized as "merely a means to fine-tune the presentation of proof and, more importantly, to sharpen the focus on the ultimate question – whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against him." *Ennis*, 53 F.3d at 59.

establishes a *prima facie* case of age-related discriminatory discharge by showing (1) that he belongs to a statutorily-protected class, here "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) an adverse employment action by his employer; (3) satisfactory job performance; and (4) different treatment from similarly situated employees outside the protected class. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Lovelace*, 681 F.2d at 238.

For purposes of this Motion, the Court assumes, without deciding, that Shell has met his *prima facie* showing of wrongful termination under the ADEA. Thus, pursuant to *McDonnell Douglas*, Tyson must now satisfy its burden to produce a legitimate, nondiscriminatory reason for its decision to terminate Shell.

## ii. LEGITIMATE NONDISCRIMINATORY REASON

If a plaintiff presents sufficient evidence to satisfy each of the underlying *prima facie* elements of his discrimination claim, then the burden of production "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the adverse action against the employee. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802-04). The defendant's burden of production in this context is not onerous; rather, it must only "articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Ennis v. National Ass'n of Business and Educational Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). "The employer is not required to prove absence of a discriminatory motive, but merely articulate some legitimate reason for its action." *EEOC v. Western Electric Co.*, 713 F.2d 1011, 1014 (4th Cir. 1983) (citing *Smith v. University of North Carolina*, 632 F.2d 316, 332-33 (4th Cir. 1980)). "If the defendant meets this burden of production, the presumption created by the

-17-

*prima facie* case 'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that [he] has been the victim of intentional discrimination." *See Ennis*, 53 F.3d at 58 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)).

Tyson has met its burden of production to demonstrate a legitimate, non-discriminatory reason for terminating Shell. As is discussed throughout this order, Tyson has alleged that it terminated Shell "following an investigation into complaints by multiple employees regarding [Shell's] demeaning and abusive treatment of them in violation of [Tyson's] policies[.]" [Doc. No. 17] at pp. 17, 19; *see also* [Doc. No. 17] at pp. 3-14. The evidence cited by Tyson in support of this reason is sufficient to carry its burden. Accordingly, the presumption of discrimination created by the *prima facie* case under *McDonnell Douglas* falls away and Shell must now carry his burden to demonstrate that a jury issue exists regarding whether Tyson's proffered reason is mere pretext for unlawful discrimination.

iii.    PRETEXT

To withstand Tyson's motion for summary judgment, Shell must now bring forth evidence tending to show that the Tyson's legitimate and lawful reason for his termination was merely pretext for unlawful discrimination. That is to say, Shell must present *some* evidence creating a genuine dispute concerning the truth of the Tyson's proffered reason for discharging him, such that a reasonable trier of fact could find that the "real reason," or "driving force," underlying his discharge was age discrimination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000); *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). Shell's evidence is lacking on this point and, therefore, it must fail.

A plaintiff can show pretext by demonstrating that the defendant's explanation is "unworthy of credence" or by "offer[ing] other forms of circumstantial evidence sufficiently

probative of intentional discrimination." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002); *Wright v. N.C. Dep't of Health & Human Servs.*, 405 F. Supp. 2d 631, 636 (E.D.N.C. 2005). If an employer offers inconsistent explanations or justifications concerning its actions, then those inconsistencies are probative of pretext. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001). Furthermore, "mere mistakes of fact are not evidence of unlawful discrimination." *See*, *e.g.*, *Price v. Thompson*, 380 F.3d 209, 215, n.1 (4th Cir. 2004); *Clark v. Creative Hairdressers, Inc.*, 2005 U.S. Dist. LEXIS 27182, at *40-41 (D. Md. 2005).

To prove pretext, a plaintiff must do more than present conclusory allegations of discrimination; rather, "concrete particulars are required." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). More than a "mere . . . scintilla of evidence" or the appearance of "some metaphysical doubt" concerning pretext must be presented. *See Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). However, even if a plaintiff proves that an employer's proffered reason is false or inconsistent, "there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148.

Most importantly, "this Court does not sit as some sort of general personnel management bureau, burdened with the duty to examine or second guess the ultimate wisdom or folly of an employer's legitimate business decisions." *Propst*, 148 F. Supp. 3d at 528; *see also Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace

-19-

reorganization, as long as the employer does not violate" applicable law.); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) ("It is not . . . the function of this court to second guess the wisdom of business decisions."). Rather, the Court's "sole concern" is whether the reason for which the Plaintiff was discharged constituted unlawful discrimination or retaliation. *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). "Thus, when an employer articulates a reason for discharging the plaintiff[,] not forbidden by law, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette*, 133 F.3d at 299 (quotations and citations omitted).

Shell first argues that pretext is demonstrated because West's investigation contained "irregularities" that violated Tyson's policies. *See* [Doc. No. 19] at pp. 18-19. Shell alleges that Brent Osborne, a human resources manager, tainted the investigation because Osborne had previously indicated that he did not like Shell. *See id.* at pp. 8-9. Shell also takes issue with West's investigation because "no employee was forced to participate in the investigation and employees were free to decline to be interviewed or make statements against Shell." *Id.* at p. 7. Shell alleges that each of these circumstances violate Tyson's policies governing internal employee misconduct investigations. *See*, *e.g.*, [Doc. No. 17] at pp. 7-9. The Court is not persuaded that any such irregularities are sufficient to demonstrate pretext. Shell relies on several cases from the Tenth Circuit, by citation only and without any discussion, for the proposition that "disturbing procedural irregularities ([such as] falsifying or manipulating criteria)" are sufficient evidence to create a jury issue on pretext. *See* [Doc. No. 17] at p. 19. Shell cites no Fourth Circuit decisions which adopt a "disturbing procedural irregularity" test for pretext. *Id.* However, even assuming the Fourth Circuit recognizes such a test, the Court does not find that it is satisfied here. According to Shell's own articulation, the procedural irregularities at issue must be "disturbing" before they can be

demonstrative of pretext. Examples of "disturbing" irregularities are those that show evidence was falsified or manipulated to achieve a discriminatory result. Here, though it is alleged that West's investigation failed to follow company policy to the letter, there is no evidence in the record to demonstrate that either West or Osborne falsified or manipulated the investigation in order to achieve a discriminatory aim. Further, the investigation as a whole was evaluated by a corporate human resources officer, Schrock, who was *not* involved in the investigation, and who has not been demonstrated to hold any sort of animus, lawful or unlawful, against Shell. Indeed, it is Schrock whom made the ultimate decision to terminate Shell. Accordingly, the Court is not inclined to find a jury issue respecting pretext on such facts.

Shell next argues that pretext is demonstrated because Cox was involved in the West investigation and, therefore, was able to push his discriminatory agenda against Shell into fruition. *See* [Doc. No. 19] at pp. 9-10, 19-20. However, as the Court discussed at length above, this evidence is unpersuasive. Cox holds no supervisory power over Tyson's human resources employees. Further, the undisputed evidence demonstrates that Schrock made the final call on whether to terminate Shell – not Cox. Moreover, as is further discussed above, Shell has failed to present evidence demonstrating a jury issue on whether Cox was even involved in the investigation. Rather, the uncontroverted evidence demonstrates that Cox did not play a role in the investigation, and that he was not informed of the decision to terminate until Schrock had already made it. Accordingly, the Court is not persuaded Shell has created a jury issue on pretext by relying on Cox's alleged involvement.

Next, Shell repeatedly argues that there are conflicts in the evidence concerning whether Shell did, in fact, engage in the misconduct alleged against him during the investigation. *See*, *generally* [Doc. No. 19]. Shell's arguments on this point, however, fallaciously assume that the

-21-

Court's inquiry is directed to the truth or falsity of the charges against him – it is not. Rather, the Court is concerned only with whether the decision-maker, here Schrock, decided to terminate Shell for lawful reasons, even if those reasons are based on misconceived or misunderstood facts, or unlawful reasons, such as because of Shell's age. *See*, *e.g.*, *Reid*, 2016 WL 51271, at *8; *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007). Specifically, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999); *see also Holland*, 487 F.3d at 220; *accord Price v. Thompson*, 380 F.3d 209, 215 n.1 (4th Cir. 2004) ("[M]ere mistakes of fact are not evidence of unlawful discrimination.").

Shell has not shown that anyone involved in the investigation or decision to terminate him did not honestly believe that that he had violated multiple rules of conduct while employed by Tyson. Indeed, the record is replete with charges of misconduct and other evidence of Shell's misconduct. Factual disputes concerning the misconduct itself are not at issue in this motion; rather, the crucial issue is whether the relevant decision-maker and investigatory officials *honestly believed* Shell had engaged in the misconduct alleged. *See Damon*, 196 F.3d at 1363 n.3; *Holland*, 487 F.3d at 220; *Reid*, 2016 WL 51271, at *8. Merely pointing out that the decision-maker and investigatory officials may have misapprehended the facts presented to them is insufficient to avoid summary judgment because this Court will not revisit the business judgment of the employer as to such facts unless the employer's decision is, itself, demonstrated to be unlawful. *See Price*, 380 F.3d at 215 n.1; *Propst*, 148 F. Supp. 3d at 528.

To summarize, the Court finds that Shell has failed to demonstrate that Tyson's decision to terminate his employment was false, or based upon inconsistent excuses or justifications. Shell

has also not demonstrated that the process by which he was investigated was falsified or otherwise manipulated such that a reasonable trier of fact could find that the aim of the investigation was to terminate Shell out of discriminatory animus. Accordingly, the Court finds that Shell has failed to create a jury issue on pretext concerning his age discrimination claim. Therefore, summary judgment is hereby **GRANTED** to Tyson on this claim.

C.     <u>Shell has Failed to Demonstrate a Genuine Issue of Material Fact Concerning Whether Tyson Terminated his Employment Based on Unlawful FMLA Retaliation</u>.

Tyson has also moved for summary judgment on Shell's FMLA retaliation claim. Like his ADEA claim, Shell may prove FMLA retaliation either with direct evidence or by utilizing the burden-shifting framework of *McDonnell Douglas*. *See Ranade v. BT Americas, Inc.*, 581 Fed. App'x 182, 183 (4th Cir. 2014) (applying *McDonnell Douglas* framework to FMLA retaliation claims "because [such] claims are analogous to Title VII retaliation claims"); *accord Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). Because Shell has not produced direct evidence of FMLA retaliation, he must proceed under *McDonnell Douglas*. In the FMLA context, a plaintiff establishes a *prima facie* case by showing that (1) he engaged in activity protected by the FMLA; (2) his employer took adverse action against him; and (3) evidence exists which implies that the adverse action was causally connected to plaintiff's protected activity. *See Ranade*, 581 Fed. App'x at 183; *Mercer v. Arc of Prince Georges Cnty, Inc.*, 532 Fed. App'x 392, 399 (4th Cir. 2013); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). If the plaintiff establishes these elements, then the burden of production again "shifts" to the employer to offer a legitimate, non-retaliatory explanation for its decision to terminate. *See Nichols*, 251 F.3d at 502. Once a legitimate, non-retaliatory reason is proffered, the plaintiff again carries the burden to establish

pretext. *See id.* at 502 (stating that a plaintiff retains the ultimate burden of persuasion to show that the defendant's "proffered explanation is pretext for FMLA retaliation").

Here, Shell argues that he has stated a *prima facie* case for FMLA retaliation and that he has demonstrated pretext by showing that his termination occurred approximately one month after he came off of FMLA leave. *See* [Doc. No. 19] at pp. 20-21. While the Court finds that Shell has fulfilled the elements of his *prima facie* case, *see, e.g.*, *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that, though a two and a half month gap between plaintiff's protected activity and an adverse employment action implied a weak causal link, such link was sufficient to satisfy the "less onerous" burden of the plaintiff's *prima facie* case); *accord Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (favorably citing *King*), mere evidence of temporal proximity is insufficient to demonstrate pretext. *See Staley v. Gruenberg*, 575 Fed. App'x 153, 156 (4th Cir. 2014) ("[T]emporal proximity alone is not sufficient to establish that [a plaintiff's] engagement in protected activity was a 'but for' cause" of his discharge. (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012)). Furthermore, Shell relies on the same pretext arguments with respect to his FMLA claim as were made in support of his ADEA claim. [Doc. No. 19] at p. 21. The Court has already rejected those arguments, and hereby does so once again. The Court, therefore, finds that Shell has not produced evidence sufficient to create a jury issue on whether he suffered an adverse employment action resulting in the form of FMLA retaliation. This finding is confirmed by Shell's *in judicio* admission that he has no evidence to support any such claim. *See* [Doc. No. 17-1] at pp. 7, 27-28, 32 (Shell Deposition).

Accordingly, summary judgment is hereby **GRANTED** to Tyson on this claim.

-24-

D. Shell has Failed to Demonstrate a Genuine Issue of Material Fact Concerning Whether Tyson Terminated his Employment in Violation of North Carolina Public Policy.

Tyson has also moved for summary judgment on Shell's state law wrongful termination claim. North Carolina's recognition of wrongful termination claims is narrow, but the State's courts do recognize such claims where an employee's termination "offends public policy." *See Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 332, 493 S.E.2d 420 (1997). One such policy is expressed in N.C.G.S. § 143-422, which recognizes the right of all persons "to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap." N.C.G.S. § 143-422.2. Shell argues that, because there is a factual dispute regarding whether his termination was unlawfully based upon age discrimination under the ADEA, his state law wrongful termination claim should survive summary judgment as well. *See* [Doc. No. 19] at p. 22.

"North Carolina courts 'look to federal decisions [in employment cases] for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.'" *Matthews v. Novant Health, Inc.*, 2010 U.S. Dist. LEXIS 52075, at *19 (W.D.N.C. Apr. 29, 2010) (quoting *N.C. Dept. of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78 (1983)), *adopted by* 2010 U.S. Dist. LEXIS 52077 (W.D.N.C. 2010). Plaintiff's wrongful termination claim is "inextricably linked" to his ADEA claim. *See Clemmons v. NVT Techs., Inc.*, 2015 U.S. Dist. LEXIS 86983, at *20-21 (M.D.N.C. 2015). Here, the Court has no trouble granting summary judgment on Shell's wrongful termination claim because he has failed to demonstrate that a triable issue of fact exists regarding whether his age was the driving force behind his termination. Thus, because Shell's ADEA claim fails, his state law wrongful termination claim must also fail to the

-25-

extent it is also rooted in alleged age discrimination. *See, e.g.*, *Youse v. Duke Energy Corp.*, 614 S.E.2d 396, 401-402, 171 N.C. App. 187 (N.C. Ct. App. 2005).

Accordingly, summary judgment is hereby **GRANTED** to Tyson on this claim.

**III.    DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1)    Defendant Tyson Foods, Inc.'s Motion for Summary Judgment (Doc. No. 16) is hereby **GRANTED**;

(2)    The parties' Joint Motion to Continue Trial (Doc. No. 23) is hereby **DENIED-AS-MOOT**;

(3)    Judgment shall be entered in favor of the Defendant and against the Plaintiff; and

(4)    The Clerk is directed to administratively terminate this case.

**SO ORDERED**.

Signed: August 26, 2016

Richard L. Voorhees
United States District Judge